Mary Etta **POLLOCK**, Plaintiff and Appellant,

v.

**McKENZIE COUNTY PUBLIC SCHOOL DISTRICT #1**, a public corporation, Defendant and Appellee.

**Civ. No. 8976.**

Supreme Court of North Dakota.

July 10, 1974.

Rehearing Denied Aug. 26, 1974.

Daniel J. Chapman, Bismarck, for plaintiff and appellant.

McIntee & Whisenand, Williston, for defendant and appellee.

PAULSON, Judge (on reassignment).

This is an appeal from the judgment of the district court of Ward County, which dismissed an action brought by plaintiff Mary Etta Pollock [hereinafter Mrs. Pollock] against the defendant, McKenzie County Public School District #1 [hereinafter School District], by which action Mrs. Pollock sought damages for breach of a contract.

Mrs. Pollock was a home economics teacher employed by the defendant School District for the school year 1970–1971, where she had been so employed for 11 years prior thereto. On or about March 23, 1971, Mrs. Pollock received a letter, bearing the same date, from Mr. Rasmus Rolfson, the president of the school board, which letter informed her

"that at the meeting of the Board last evening, March 22nd, it is the intent of the Board of Education to not offer you a Contract for the coming school year".

The letter also stated that the next meeting of the Board of Education would be the regularly scheduled meeting to be held April 13, 1971. Mrs. Pollock, on the same day, was also called to the office of the superintendent of schools and was orally informed by the superintendent concerning the school board's action at its March 22, 1971, meeting.

In a letter to Mr. Rolfson dated March 31, 1971, Mrs. Pollock requested

"a hearing of the Board of Education to discuss and hear the reason of your intent not to offer me a contract for the coming school year".

She further stated that she intended "to have N.D.E.A. representation".

Shortly thereafter, Mr. Rolfson received a letter from Mr. Adrian R. Dunn, the assistant executive secretary of the North Dakota Education Association [hereinafter NDEA]. Mr. Dunn's letter, bearing the date April 7, 1971, stated that Mr. Rolfson's letter dated March 23, 1971, failed to conform to the statutory requirements of § 15–47–38, N.D.C.C., in that

"(1) it does not notify the teacher that the board is 'contemplating not renewing' the teacher's contract;

"(2) it does not inform the teacher in writing 'that he may request and appear at a meeting to be held by the school board *prior to the final decision*' on re- .

newing or not renewing the contract. Italics ours." [Emphasis NDEA's.]

In his letter, Mr. Dunn further stated that the school board had acted illegally, and he requested that Mrs. Pollock be offered a contract "as required by law".

The minutes of the April 13, 1971, meeting of the school board indicate that Mr. Arlo Beggs, NDEA representative, appeared on behalf of Mrs. Pollock. Mrs. Pollock did not appear at the meeting. The minutes disclose that after Mr. Beggs spoke "in the interest of Mary Etta Pollock", the school board adopted a motion stating that "the Board of Education does not extend a Teacher's Contract to Mary Etta Pollock for the teaching year 1971–1972".

In a letter bearing the same date as the April 13, 1971, minutes of the school board meeting, Mr. Rolfson informed Mrs. Pollock that the school board, after repeated attempts to arrange a hearing as requested in her letter to Mr. Rolfson dated March 31, 1971, decided at the April 13 school board meeting not to offer her a teaching contract for the 1971–1972 school year.

Mr. Rolfson thereafter received a letter dated April 19, 1971, from Daniel J. Chapman, an attorney representing Mrs. Pollock, asserting that the procedure followed by the school board relating to its determination not to renew Mrs. Pollock's contract did not comply with § 15–47–38, N.D.C.C.

The minutes of the March 22, 1971, meeting of the school board are silent as to any action taken by the board relating to Mrs. Pollock, although Mr. Rolfson's letter of March 22 indicates that such letter was written pursuant to action taken at the March 22 school board meeting.

Mrs. Pollock subsequently instituted this action against the School District for breach of contract, claiming damages of $10,890. The case was tried to the court without a jury. Thereafter, the court issued findings of fact, conclusions of law,

and an order for judgment, and entered judgment for the School District, dismissing Mrs. Pollock's action.

The issues on appeal are summarized as follows:

(1) Whether the procedures utilized by the school board complied with the requirements of § 15–47–38, N.D.C.C.; and

(2) Whether any defects in the procedures followed by the school board were waived by Mrs. Pollock.

█ This case calls for construction and interpretation of two statutes as they appeared at the time this case arose. § 15–47–27, N.D.C.C., was amended and reenacted as § 65, Chapter 158, 1961 S.L., and provided as follows:

"*15–47–27. Time for renewal of teachers' contracts.*—Any teacher who has been employed by any school district or state board of higher education in this state during any school year, shall be notified in writing by the school board or state board of higher education, as the case may be, not earlier than the fifteenth day of February and not later than the fifteenth day of April in the school year in which he or she has been employed to teach, of the board's determination not to renew the teacher's contract for the ensuing school year, and failure to give such written notice on or before said date shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. On or before April fifteenth in any year and not earlier than February fifteenth, the board shall notify all teachers of a date, which shall not be less then thirty days after the date of such notice, upon which they will be required to accept or reject such proffered re-employment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer.

Any teacher who shall have accepted the offer of re-employment, either by the action of the board, or nonaction of the board on or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the ensuing school year, as provided by law and shall notify the board in writing of his or her acceptance or rejection on or before the date specified by the board or before May first whichever is earlier. Failure on the part of the teacher to so notify the board shall relieve the board of the continuing contract provision of sections 15–47–26 through 15–47–28. Nothing in this section shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause."

Section 15–47–38, N.D.C.C., was enacted as Chapter 147, 1967 S.L., and provided as follows:

"*15–47–38. Legislative intent in employment of teachers—Notification of discharge or failure to renew—Hearing.* —1. The legislative assembly, in recognition of the value of good employer-employee relationships between school boards of this state and the teachers employed in the school systems, the need to recruit and retain qualified teachers in this state, and further in recognition of the many intangibles in evaluating the performance of individual members of the teaching profession, urges that each school board of this state ensure through formally adopted policies, that channels of communication exist between the board, supervisory personnel, and teachers employed within its school system. It is the intent of the legislative assembly that in the very sensitive area of discharge of teachers for cause prior to the expiration of the term of the teachers' contracts, or in decisions not to renew the contracts of teachers, that recognition be given by school boards to damage that can result to the professional stature and reputation of such teachers, which stature and reputation were acquired

only after the expenditure of substantial time and money in obtaining the necessary qualifications for such profession and in years of practicing the profession of teaching; and that in all decisions of school boards relating to discharge or refusal to renew contracts, all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency.

"2. The school board of any school district contemplating discharging a teacher prior to the expiration of the term of the teacher's contract, or contemplating not renewing a teacher's contract, shall notify such teacher in writing of such fact at least ten days prior to the date of discharge or final date to renew the teacher's contract. Such teacher shall be informed in writing that he may request and appear at a meeting to be held by the school board prior to the final decision of such teacher's discharge or failure to renew such teacher's contract. The school board shall give an explanation and shall discuss at such meeting its reasons for the contemplated decision of the board in discharging such teacher or refusing to renew the teaching contract of the teacher. The meeting shall be an executive session of the board unless both the school board and the teacher requesting such meeting shall agree that it shall be open to other persons or the public. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any executive session of a school board held for the purposes provided in this section."

Our review of the record in the instant case convinces us that the judgment must be reversed and the case remanded.

■ Although we find that Mr. Rolfson's letter of March 23 does not appear to be authorized by the minutes of the school board meeting of March 22, we believe that it was authorized as indicated by the testimony of Dr. Moravec and Mr. Ander-son, members of the school board, both of whom attended the March 22 meeting. However, it is our view that Mr. Rolfson's letter fails to meet the requirements of, and cannot be considered as, notice of a *contemplated* course of action, under § 15–47–38, N.D.C.C. We believe that Mr. Rolfson's letter, if authorized by the school board, constituted a notice of a *final* decision by the school board not to renew Mrs. Pollock's contract. The import of the language used by Mr. Rolfson is clearly one of finality—"it is the intent of the Board of Education to not offer you a Contract for the coming school year".

However, as we stated in Henley v. Fingal Public School District #54, 219 N.W. 2d 106 (N.D.1974):

"   .   .   .   the first notice given by the school board to the teacher must be one which informs the teacher that it is 'contemplating not renewing' his teacher's contract."

Thus, even if we were to accept the proposition that an informal action was taken by the school board authorizing notification to Mrs. Pollock that the board was contemplating not renewing her contract, then such notice was fatally defective in its failure to conform to the requirements of the statute, namely, § 15–47–38, N.D.C.C.

Furthermore, Mr. Rolfson's letter of March 23 does not advise Mrs. Pollock of her right to a hearing with the school board, pursuant to § 15–47–38, N.D.C.C. This court, in Hennessy v. Grand Forks School District #1, 206 N.W.2d 876 (N.D.1973), in paragraphs 1 and 3 of the syllabus, held:

"1. The decision of whether to rehire a teacher for the ensuing school year is left to the discretion of the school board, but before such decision is finalized the school board must notify the teacher of its contemplated decision not to rehire and afford the teacher an opportunity to meet with the school board at an informal executive session, at which time the school board shall give an explanation

and discuss with the teacher and, at his election, his representative the reasons for the contemplated decision. Sections 15–47–27 and 15–47–38, N.D.C.C.

"3. Section 15–47–38, N.D.C.C., requiring a school board, before making its final decision, to notify a teacher that it is contemplating a nonrenewal of the teacher's contract and allowing the teacher, upon request, to meet with the school board in executive session, at which meeting the school board shall give an explanation and discuss its reasons for the contemplated action, does not intend a decision-making meeting of the school board."

We adhere to this interpretation of the requirements of §§ 15–47–27 and 15–47–38, N.D.C.C.

■ Since the purported notice given by the school board in the instant case was defective, both procedurally and on its face, the school board in effect gave no notice that it was contemplating not renewing Mrs. Pollock's contract, and the provisions of § 15–47–27, N.D.C.C. [S.L.1961, Ch. 158, § 65], are applicable. This statute provides that failure to give notice of a determination not to renew shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions, provided the teacher notifies the board in writing of his or her acceptance of the contract.

The school board argues that such acceptance by Mrs. Pollock was required by the statute to be in writing. In the recent case of Huso v. Bismarck Public School Board, 219 N.W.2d 100 (N.D.1974), we held that failure on the part of the teacher to notify the school board in writing of his acceptance of such offer, on or before May first of the same year, relieves the school board of its offer of renewal. However, the Huso case is distinguishable from the case at bar on the ground that there were no extenuating circumstances. Huso, the teacher, had informed a number of people of his desire to retire from teaching, and in no way sought to dispel the assumption on the part of his supervisors that he intended to retire, until he presented himself at work.

■ In the case at bar, Mrs. Pollock, as evidenced by her letter of March 31, 1971, sought a hearing to determine why the board had made its purported decision not to rehire her. She sought the assistance of NDEA in an attempt to regain her position.

At the April 13, 1971, school board meeting Mrs. Pollock was represented by Mr. Arlo Beggs of the NDEA, who repeated Mrs. Pollock's contention that the March 23 letter from Mr. Rolfson failed to comport with the notice requirements of § 15–47–38, N.D.C.C. The letter from Mr. Dunn, the executive secretary of NDEA, stated that NDEA regarded the actions of the school board as illegal and requested that Mrs. Pollock be offered a contract for the ensuing school year. Mrs. Pollock conferred with Mr. Rolfson privately in an attempt to ascertain the reason why his March 23 letter was written. In a letter to Mr. Rolfson dated April 22, 1971, Mr. Eric P. Arntson, president of the Watford City Education Association, stated that the membership of that organization agreed to accept the information contained in Mr. Dunn's letter, and asked that Mrs. Pollock's contract be renewed.

All of the above activity indicate that Mrs. Pollock was desirous of continuing as a teacher and such activity is distinguishable from the inactivity of the teacher in *Huso, supra.* We hold that under the circumstances of this case, Mrs. Pollock's activity constituted acceptance of the offer under the "continuing contract" provisions of § 15–47–27, N.D.C.C.

■ The school board argues that Mrs. Pollock's activity did not constitute acceptance of an offer, but rather that such activity constituted a waiver of any defects in the notice required by § 15–47–38, N.D.C.C. We cannot agree. "Waiver"

is defined in 92 C.J.S. Waiver p. 1041, as the "intentional relinquishment of a known right, or the voluntary relinquishment of a known right", and it is further stated therein that "while the term has various meanings dependent upon the context, it is, nevertheless, capable of taking on a very definite meaning from the context in which it appears". 92 C.J.S., *supra.* The school board would have us accept the proposition that by objecting to the failure of the board to meet the notice requirements of § 15–47–38, N.D.C.C., Mrs. Pollock thereby waives her right to receive proper notice, and, further, that she thereby waives the right to take advantage of the "continuing contract" provisions of § 15–47–27, N.D.C.C. Statutes must be construed to avoid ludicrous and absurd results. State v. Allesi, 216 N.W.2d 805, Syll. ¶ 10 (N.D.1974). We therefore hold that Mrs. Pollock did not waive the "continuing contract" provisions of § 15–47–27, N.D.C.C., by the fact that she and the NDEA objected to the failure of the school board to give the "notice of contemplated nonrenewal" required by § 15–47–38, N.D.C.C.; and we further hold that by objecting to the failure of the school board to give the "notice of contemplated nonrenewal" and by actively seeking reinstatement as a teacher, Mrs. Pollock has met the "acceptance" requirements of § 15–47–42, N.D.C.C.

The judgment is reversed and the case remanded to the trial court for further proceedings consistent with this opinion and for the purpose of ascertaining the compensatory damages to which Mrs. Pollock is entitled.

ERICKSTAD, C. J., and VOGEL, J., concur.

KNUDSON, J., dissents.

JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate.

KNUDSON, Judge (dissenting).

I dissent. I cannot agree with the majority that the notification to Mrs. Pollock was insufficient under the statute, § 15–47–38, N.D.C.C., nor that her letter requesting a hearing constituted an acceptance of a teacher's contract for the ensuing school year on the failure of the school board to notify the teacher of its determination not to renew the teacher's contract for the ensuing school year under § 15–47–27, N.D.C.C.

Mrs. Pollock, a home economics teacher, employed by the defendant school district for the school year 1970–1971, received a letter dated March 23, 1971, from the president of the school board, Mr. Rolfson, informing her "that at the meeting of the board last evening, March 22, it is the intent of the board of education to not offer you a contract for the coming school year." The letter also informed her that the next meeting of the board was the regular meeting on Tuesday, April 13, at 8 p. m.

Shortly thereafter, Mr. Rolfson received a letter from Mr. Dunn, the Assistant Executive Director of the NDEA, dated April 7, 1971, on behalf of Mrs. Pollock, that the letter of Mr. Rolfson did not meet the requirements of § 15–47–38, North Dakota Century Code, in that the letter (1) did not notify the teacher that the board is "contemplating not renewing" the teacher's contract, nor (2) it did not inform the teacher in writing "that he may request and appear at a meeting to be held by the school board prior to the final decision on renewing or not renewing the contract."

Mrs. Pollock sent a letter to Mr. Rolfson, dated March 31, 1971, in which she indicated "I would like to request a hearing of the Board of Education to discuss and hear the reason of your intent not to offer me a contract for the coming school year," and stated that she intended to have NDEA representation.

On April 13, 1971, Mr. Rolfson directed a letter to Mrs. Pollock informing her that the school board, after repeated attempts to

arrange a hearing as requested in her letter to Mr. Rolfson dated March 31, 1971, decided at the school board meeting held on April 13, 1971, not to offer her a teaching contract for the 1971–1972 school year.

Following this, Mr. Rolfson received a letter, dated April 19, 1971, from Daniel J. Chapman, an attorney representing Mrs. Pollock, asserting that the procedure followed by the school board relating to the determination not to renew the contract of Mrs. Pollock did not comply with § 15–47–38, N.D.C.C.

The minutes of the meeting of the school board of March 22 are silent as to any action taken by the board relating to Mrs. Pollock, although Mr. Rolfson's letter of March 22 to Mrs. Pollock indicates that it (Mr. Rolfson's letter) was in response to action taken at the March 22 school board meeting.

The minutes of the meeting of the school board of April 13 indicate that Mr. Arlo Beggs, NDEA representative, appeared on behalf of Mrs. Pollock. Mrs. Pollock did not appear at the meeting. The minutes disclose that after such appearance on behalf of Mrs. Pollock the school board adopted a motion that "the Board of Education does not extend a teacher's contract to Mary Etta Pollock for the teaching year 1971–1972." Mrs. Pollock was notified by the letter of April 13 of Mr. Rolfson of the action of the school board that she would not be offered a teacher's contract for the 1971–1972 school year.

Mrs. Pollock subsequently brought an action against the McKenzie County Public School District for wrongful breach of contract and for damages of $10,890. Following trial by the court, the court entered judgment for the defendant school district, dismissing the action of Mrs. Pollock. Mrs. Pollock has appealed therefrom setting forth several issues, which may be summarized as follows: (1) whether or not action of a school board, whether at a regular meeting or executive session, of which the minute record is silent, constitutes official action of the board; (2) whether a letter advising the teacher that "it is the *intent* of the Board of Education to not offer you a contract for the coming school year" complies with the requirements of § 15–47–38, N.D.C.C., "that the board should give notice of its *comtemplated* action prior to the final action on the nonrenewal of a teacher's contract;" and (3) does a letter informing the teacher that the regular meeting of the board will be held at a specific time and place comply with the requirement of § 15–47–38, N.D.C.C., that the teacher be informed in writing that he may request and appear at a meeting to be held by the school board prior to the final decision on such failure to renew such teacher's contract.

I will consider whether the notice given by Mr. Rolfson to Mrs. Pollock was authorized by the official action of the school board.

I am of the opinion that the letter of March 23 from Mr. Rolfson to Mrs. Pollock informing her that the school board did not intend to renew her teacher's contract for the ensuing school year was a valid notice as required under either § 15–47–27 or § 15–47–38, N.D.C.C., as Mr. Rolfson, acting as the president of the school board, was authorized at the March 22, 1971, meeting of the school board to inform Mrs. Pollock of the action of the school board, although the record does not disclose that it was authorized at that meeting of the school board. The record does show that the school board did meet on March 22 and did consider several teachers' contracts, but the minutes are silent as to any action taken as to the renewal or nonrenewal of the teacher's contract with Mrs. Pollock. While it is better that such action and authorization be by the official action of the school board acting at a duly held meeting and recorded in the minutes, the failure to record the proceedings in the minutes of the meeting is not fatal, and the action of the school board may be shown by parol testimony.

The minutes of the March 22 meeting were not corrected at any subsequent meeting to show any action taken as to the renewal or nonrenewal of Mrs. Pollock's teacher's contract. However, testimony indicates that the school board had considered the renewal or nonrenewal of Mrs. Pollock's contract at the March 22 meeting. Mr. Rolfson testified that at the March 22 meeting Mrs. Pollock's teacher's contract was reviewed with those of all the other teachers and that no definite decision was made as to Mrs. Pollock's contract. He further testified that he was instructed by the school board at the meeting to write a letter to Mrs. Pollock, and his testimony discloses that the school board directed him to inform Mrs. Pollock of the school board's contemplation not to renew her teacher's contract.

It would have been preferable for the clerk to have made an entry in the minutes, showing a motion duly carried, to the effect that the school board was contemplating not renewing the teacher's contract of Mrs. Pollock for the ensuing year, and authorizing the president of the school board to inform her of such action in writing, and further to inform her, in writing, that she may request and appear at a meeting to be held by the school board prior to the final decision of such school board, refusing to renew the teaching contract of the teacher. The record in the minutes may be in the language of the statute, and need not contain all of the discussion that ensued prior to the adoption of the motion.

In 68 Am.Jur.2d Schools § 48, page 399, the text writer states that parol evidence is admissible to add to the record of a school board meeting by showing a proceeding which the minutes fail to show, in the following language:

"As to the admissibility of parol evidence to add to the record of a school board meeting by showing a proceeding which the minutes or record fail to show, it has been held that where the minutes failed to show any such proceeding, parol evidence is admissible to show

the approval by a board of education of an official bond, and to show the assessment of a school tax by the school directors.

"Where no record of a meeting of school directors is made, the proceedings may be proved by the testimony of anyone present. Similarly, where the secretary of a school board has failed to keep a record of the proceedings of the board, or where the record has been lost, they may be proved by secondary evidence, even though the law requires that they shall be kept in a certain specified manner."

The testimony of Mr. Molland, the superintendent of schools, Mr. Rolfson, president of the school board, and Mr. Anderson and Dr. Moravec, members of the school board, all of whom attended the March 22nd meeting, show that the teacher's contract of Mrs. Pollock was discussed at that meeting of the school board; that the discussion was informal; that no definite determination as to renewal or nonrenewal was made; that the members, without formal motion, but as a consensus, directed Mr. Rolfson, as president of the school board, to inform Mrs. Pollock that the school board was contemplating not renewing her teacher's contract for the ensuing year. It appears from reading the transcript of the parol testimony of the above witnesses present at the March 22nd meeting of the school board that the school board was attempting to comply with the provisions of § 15-47-38, giving the maximum consideration to basic fairness and decency in considering the renewal or nonrenewal of Mrs. Pollock's teacher's contract, with the admonition in mind of the statute that "all actions of the board be taken with consideration and dignity."

Mr. Molland testified that he met with Mrs. Pollock the next day at 4:00 p. m., after the school board meeting of March 22nd, and discussed with her her position, the contemplation of the board not to renew her contract, and to inform her of this, and to inform her of her right to

have a hearing to arrange or consider arranging for a hearing if she would choose to do so.

Mrs. Pollock's testimony regarding this conference with Mr. Molland was substantially in agreement with that of Mr. Molland.

Mr. Rolfson testified that he had telephone conversations with Mrs. Pollock after receiving her letter of March 31st to him requesting a hearing with the school board "to discuss and hear the reason of your intent not to offer me a contract for the coming school year. I intend to have NDEA representation", to set up a date for a hearing if the date of April 13 was not satisfactory to her. While there is some discrepancy in the testimony of Mr. Rolfson and Mrs. Pollock as to the time and content of these telephone conversations, it seems that discussion was had regarding setting a date for the hearing requested by her, if April 13, the date of the regular meeting of the school board, was not satisfactory.

Mrs. Pollock contends that the letter did not comply with § 15–47–38 in that it stated, "it is the *intent* of the board of education to not offer you a contract for the coming school year" instead of the language of the statute, "The school board . . . *contemplating* not renewing a teacher's contract . . . ." She argues that by the use of the word "intent" that the school board made a final decision contrary to § 15–47–38.

Webster's Third International Dictionary (1966) defines "contemplate," "to have in view as a purpose: anticipate doing or performing: plan on: Intend, Plan [cross-reference]; and defines the word "intent," "purpose or design: the state of mind: meaning, purport, significance."

And, in The Synonym Finder by Rodale, the work "intend" is given as a synonym to the word "intend" is given as a synonym to tion" as a synonym to the word "intent."

I am of the opinion that the school board in the letter to Mrs. Pollock used the word "intent" in the same context as the word "contemplating" in the statute. This is also borne out by the testimony of the superintendent and the directors present at the meeting where they all expressed the action taken by the board as "contemplating", and indicated that no final action had been taken on the renewal or nonrenewal of Mrs. Pollock's contract for the ensuing year.

The school board asserts that even though the procedure followed by the school board may not have been in substantial conpliance with the statute, that Mrs. Pollock, by her own acts and conduct, intentionally and voluntarily waived any rights she may have had under § 15–47–38.

The evidence discloses that she received a letter from Mr. Rolfson of the school board's intent not to renew her teacher's contract and advising her of the date of the next regular meeting of the school board; that Mr. Molland informed her of the action of the school board and advised her of her right to request a hearing; that she sent a letter to Mr. Rolfson requesting a hearing and that she would have NDEA representation at the hearing; that Mr. Rolfson telephoned her after receiving her letter to set a date for the hearing if the school board meeting on April 13 was not convenient; and that Mr. Beggs, a representative of NDEA, appeared on behalf of Mrs. Pollock at the school board meeting on April 13.

These circumstances and the acts of Mrs. Pollock connote that Mrs. Pollock accepted the letter from Mr. Rolfson for what she considered it to be—a notification by the school board that it contemplated *not renewing* her teacher's contract for the ensuing year and that she had a right to request a hearing. When she received the notice she had a choice to object to it or to accept it and act upon it. It may be said that in the first instance she did object to it, as the letter from the NDEA on her be-

half indicated that the procedure of the school board was defective; however, thereafter she requested a hearing and informed the school board she would have NDEA representation.

I am of the opinion that by this action she treated the letter from Mr. Rolfson and the oral notice from Mr. Molland, together with the telephone conversation with Mr. Rolfson, as a valid notice, and thereby, by acting on the notice, she waived any irregularities that may have attended the procedures of the school board.

A waiver, according to the generally accepted definition, is the voluntary and intentional relinquishment of a known right, claim or privilege. 28 AmJur.2d, Estoppel and Waiver, § 154, page 836.

In Board of Public Education v. Delaney, 2 Storey 213, 52 Del. 213, 155 A.2d 51 (1959), rejecting the contention that only the board of education had power to send the notice of intention to dismiss and that a letter from the superintendent of schools stating his intention was insufficient, the court held that in any event by *acting on the notice* and seeking a hearing the teacher had waived any right he might have to object to the notice. Annotation, 92 A.L. R.2d 764, § 5.

I am of the opinion that the circumstances of the instant case indicate that Mrs. Pollock waived whatever right she had to object to the procedure followed by the school board and has waived any irregularities that may have attended the procedures of the school board.

Although the school board may not have followed the provisions of the statute to the letter, there is no doubt that Mrs. Pollock understood the school board was contemplating not to rehire her for the next school year and that she was entitled to a meeting to be held by the school board prior to their final decision. This is evidenced by her letter of March 31st. Thereafter such a meeting was held, on April 13, at which she was represented by Mr. Beggs. Following this meeting, the school board made its final decision not to rehire her. I am of the opinion there was substantial compliance with § 15–47–38, N. D.C.C.

I would affirm the judgment of the trial court.